**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 15-496-1** |
| **NAYEEM GORDON** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S SECTION 2255 PETITION**

Defendant Nayeem Gordon filed a motion to vacate his sentence pursuant to 28

U.S.C. § 2255, alleging that his counsel was ineffective pretrial and at sentencing. He

also alleges that his prosecution under 18 U.S.C. 922(g) is null and void based on the

Supreme Court's decision in *Rehaif* v. *United States*, 139 S. Ct. 2191 (2019) and he seeks

to stay resolution of his motion pending resolution of *United States v. Nasir,* which the

Third Circuit decided on December 1, 2020. As explained below, Gordon is not entitled

to habeas relief and his motions should be denied in all respects.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Gordon was arrested by Complaint and Warrant on September 18, 2015. He was

indicted on October 14, 2015 and Superseding Indictments were returned on February 10,

2016, August 17, 2016 and on August 6, 2019. Gordon and six of his twelve

codefendants proceed to trial in November and December 2018 and Gordon was found

guilty of nine counts of distribution of phencyclidine (PCP), in violation of 21 U.S.C. §

841(a)(1), (b)(1)(C), nine counts of distribution of PCP within 1000 feet of a school, in

violation of 21 U.S.C. § 860(a), and two counts of possession with intent to distribute more than 100 grams of PCP, in violation of 21 U.S.C. § 841(a)(1). The jury was unable to reach a verdict as to the remaining counts against Gordon and others and a retrial was set for October 15, 2019.

Gordon pled guilty on October 16, 2019 in the middle of jury selection for the retrial. That plea was to Counts 1, 2-28, and 49-50 of a Third Superseding Indictment charging him with conspiracy to distribute one kilogram or more of a mixture and substance containing a detectable amount of PCP, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) (Count 1); possession with intent to distribute PCP, in violation of 21 U.S.C. § 841(a)(1) (Counts 2-8, 10, 12-21, 23-24, and 26-28); possession with intent to distribute PCP within 1000 feet of a school, in violation of 21 U.S.C. 860(a) (Counts 9, 11, 22 and 25); possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 49); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 50).

All of these charges arise from Gordon's leadership of a drug trafficking group that distributed PCP in and around Philadelphia. Between March of 2015 and his arrest approximately seven months later, Gordon distributed or possessed with intent to distribute at least 8.5 kilograms of PCP, which he continuously supplied to his coconspirators for redistribution.  During this time, Gordon controlled 3140 North Broad Street, a stash house for his PCP distribution business, and he used his bother Jermaine

and his nephew Hakeem, to distribute PCP to codefendants Keith Gordon, Saleem

Jackson, Hakeem Enoch, Gregory Robinson, Anthony Hall, and Ronald Byrd and

numerous others who then redistributed those drugs to their various customers throughout

Philadelphia. The PCP was distributed in liquid form and packaged in glass jars and/or

sixteen-ounce bottles.

As the wiretap calls played during trial demonstrate, Gordon ran his drug

distribution business twenty-four hours a day, seven days a week. During that time, he

regularly called his brother Jermaine or his nephew Hakeem, to check on the status of

drug sales, those who owed drug debts, and the amount of PCP available at 3140 North

Broad Street to sell. He also spoke regularly with his distributors, including the

codefendants referenced above, and discussed their ability to resell the PCP supplied by

Gordon, the prices they charged for the PCP, and their customers' reactions to the quality

of the PCP.

Gordon regularly received PCP from supplier Ishmi Powell and others and he

stored that PCP at 3140 North Broad Street and at 3323 Brookview Place, where over

four kilograms of PCP was found just feet away from a loaded Ruger, 9mm firearm.

Gordon was seen coming and going from 3323 Brookview Place during time period

charged in the Indictment, intercepted calls established his control over that apartment,

and documents in his name, including his driver's license, were recovered pursuant to a

search warrant issued for that location. At the time Gordon possessed that firearm, he had

3

a previous conviction, of which he had knowledge, for a crime punishable by more than one year in prison and the firearm was possessed and moved in interstate commerce in that it was manufactured outside the Commonwealth of Pennsylvania.

At the time of the entry of the plea, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that the following specific sentence was an appropriate disposition of this case: 204 months in prison, a 6-year period of supervised release, a fine, if any, in an amount left to the discretion of the Court, and a $3,300 special assessment. At a hearing on October 16, 2019, the Court accepted Gordon's guilty plea after an extensive colloquy and after finding that the plea was knowingly and voluntarily entered. *See* Transcript of Change of Plea Hearing, Docket No. 945. The court also assured Gordon was satisfied with the representation of his trial counsel, Paul J. Hetznecker. Change of Plea Tr., at 7:16-17, Docket No. 945, Oct. 15, 2019. Gordon also acknowledged this in the Plea Agreement that he signed on October 16, 2019. *See* Guilty Plea Agreement, Docket No. 920, at ¶ 17.

On March 3, 2020, the Court sentenced Gordon to 204 months in prison, a 6-year period of supervised release and a $3300 special assessment. *See* Docket No. 978.

Gordon did not appeal his sentence, consistent with his plea agreement with the government.  He filed the present motions pro se on October 27, 2020 and they were docketed on October 30, 2020. On November 12, 2020, this Court ordered that the government respond to these motions within 30 days of the date of its order and later

extended that deadline at the government's request to January 15, 2021. For the reasons set forth below, the motions should be denied.

## II.     STANDARD OF REVIEW

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must meet both prongs of a two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under this test, the petitioner bears the burden of showing that (1) counsel's conduct was so deficient that it "fell outside the wide range of professionally competent assistance" and (2) that the petitioner was prejudiced as a result of this deficient conduct.  *Id*. at 687.  There is a "strong presumption" that counsel's performance was reasonable.  *Id*. at 689.  The petitioner must also demonstrate that, but for the alleged unprofessional conduct of his counsel, there is a "reasonable probability that the outcome . . . would have been different."  *Id*. at 694.  As the standard for ineffective assistance of counsel demonstrates, the right to counsel does not entitle one to effective counsel, merely reasonably "competent assistance."  *Id.* at 687.

As set forth below, Gordon cannot satisfy either prong of the *Strickland* test. Nor can he show that but for his attorney's alleged unprofessional conduct, there is a reasonable possibility that he would not have knowingly and voluntarily entered into a guilty plea with a recommended sentence that was 148 months below the low end of the applicable guideline range. While the government addresses each of Gordon's claims below, it suffices to say that each claim is completely at odds with the extensive record in

this case and falls far short of satisfying the *Strickland* standard. His claims as to the length of his sentence and his conviction under 18 U.S.C. 922(g) are also barred procedurally and by Gordon's guilty plea agreement. In sum, Gordon's motion is entirely without merit, it should be denied and a certificate of appealability should not issue.

### III.   ARGUMENT

#### A.  Gordon's Claims Challenging the Length of his Sentence and his Prosecution under 18 U.S.C. 922(g) Fail for Several Independent Reasons.

Among Gordon's claims are that his counsel failed to negotiate a favorable plea, object to the Presentence Report, argue for mitigation at sentencing and object to his sentence as substantively unreasonable. These arguments challenge the sentence ultimately imposed. As such, they are barred by the procedural default rule and by Gordon's plea agreement. They also fail on the merits.

Gordon also argues that his prosecution under 18 U.S.C. § 922(g) was null and void because the Government was not able to prove both that Gordon knew he possessed a firearm and that he belonged to the relevant category of persons barred from possessing a firearm. *See* 2255 Mot., Docket No. 1037, at p.9.  He grounds this argument in the Supreme Court's decision in *United States v. Rehaif.*  In *Rehaif*, which was decided almost four months before Gordon entered his guilty plea,[1] the Supreme Court held that

---

[1] This claim, then cannot be based on an intervening change in the law as most *Rehaif* challenges are because *Rehaif* controlled at the time Gordon entered his plea and his plea complied with *Rehaif* for the reasons discussed herein. Moreover, the time in which to assert an intervening change in the law based on *Rehaif* expired on June 21,

the knowledge element of the 922(g) offense requires proof that the defendant knowingly possessed a firearm and knew of the status that made the possession illegal. Gordon also asks this Court to stay its decision on his motion pending the Third Circuit's decision in *United States v. Nasir.* That request is now moot as the Third Circuit issued its decision in *Nasir* this past December.[2]

Gordon's *Rehaif* claim also fails. It, too, is procedurally defaulted because it was not presented on direct appeal and Gordon cannot show cause or actual prejudice. The claim also is barred by Gordon's Plea Agreement and it fails on the merits. Moreover, it should not be considered due to the concurrent sentence doctrine.

### 1. Gordon's Claim Regarding his 922(g) Conviction Should Not Be Considered Due to the Concurrent Sentence Doctrine.

The 922(g) conviction had no impact on Gordon's sentence. Gordon faced a guideline range of 352 months to 425 months' imprisonment, based exclusively on the drug trafficking counts and his status as a career offender, without any consideration of

---

2020, four months before Gordon filed the present claim.  *See* 28 U.S.C. § 2255(f)(3).

[2] In *Nasir,* the Court held that a *Rehaif* error in failing to prove at trial or state at a guilty plea that a 922(g) offender was aware of the status that made firearm possession illegal is plain error that requires a new trial. *United States v. Nasir*, No. 18-2888, at p.50 (3d Cir. Dec. 1, 2020) (en banc). That is not at issue here because, among other reasons, the factual basis for Gordon's guilty plea – to which Gordon admitted – included that Gordon was aware of a prior conviction that made his possession of a firearm illegal. *See* Change of Plea Tr., 29:5-30:4, Docket No. 945, Oct. 16, 2019. Moreover, *Nasir* is inapplicable as it involved a direct appeal, not the habeas motion presented here.

the firearm offense. *See* Sentencing Hearing Tr. at 18:16-20:2, 27:19, Docket No. 1048,

Mar. 3, 2020. The Court imposed a total sentence of imprisonment of 204 months. *See*

Docket No. 978. The sentence included a term of 120 months on Count 50, the 922(g)

charge, to run concurrent to the 144 months' imprisonment imposed on the majority of

the counts of conviction plus a consecutive sentence of 60 months' imprisonment on

Count 49, the 924(c) charge, for a total of 204 months as agreed upon by the parties. *See*

Judgment and Conviction, p. 3, Docket No. 980. Thus, the outcome of this habeas

proceeding on the 922(g) charge is of no actual consequence.

In these circumstances, under the concurrent sentence doctrine, the habeas motion

should be dismissed. "That canon may appropriately be applied when the alleged error is

associated only with counts for which concurrent sentences are imposed and the other

sentences are unassailable. In that circumstance, an appellate court may decline to review

the challenged rulings. The theory is that because the defendant remains sentenced in any

event, reviewing the concurrently sentenced counts is of no utility. The practice is

eminently practical and conserves judicial resources for more pressing needs." *Jones v.

Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986). Thus, in *Gardner v. Warden Lewisburg

USP*, 845 F.3d 99 (3d Cir. 2017), upon rejecting a habeas challenge to counts of

conviction on which life sentences were imposed, the Court declined to address a distinct

challenge to other counts based on a recent Supreme Court decision, *Rosemond*. The

Court stated: "Accordingly, our review of the *Rosemond* claim cannot alter the term of

8

Gardner's imprisonment. Thus, under the concurrent sentence doctrine, we would decline to do so even if his *Rosemond* claim were persuasive." *Id.* at 104. The Court noted that it is irrelevant that special assessments were imposed on the additional counts, given the decision in *United States v. Ross*, 801 F.3d 374 (3d Cir. 2015), that a special assessment or other financial penalty does not support relief under Section 2255.

Thus, in this case, because the term of imprisonment on the 922(g) charge is entirely concurrent to and less than the sentences imposed on other counts, the 2255 challenge to Gordon's prosecution under 18 U.S.C. §922(g) should not be addressed.

### 2. Gordon's Claims as to the Length of his Sentence and 922(g) Prosecution are Barred by Procedural Default.

A claim may not be raised under Section 2255 if there was a full opportunity for the petitioner to be heard during the trial phase and on direct appeal.  In other words, the "general rule" of procedural default is "that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring) ("[I]f the claim was not raised [on direct appeal], it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations . . . .").

The Third Circuit and every other appellate court has applied the procedural default rule. *See, e.g.*, *United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003).

9

Moreover, allowing a Section 2255 motion to serve as a substitute for direct appeal violates the rationale behind the final judgment rule:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect.
>
> For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*United States v. Frady*, 456 U.S. 152, 164-65 (1982).  Not only may a Section 2255 motion "not do service for an appeal," but the Supreme Court has recognized "the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *Id.* at 165-66.

There are two exceptions to the procedural default bar regarding issues not raised on direct appeal.  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

Gordon's claims as to the length of his sentence and prosecution under Section 922(g) are barred by the procedural default rule. Gordon did not raise these claims on any

10

direct appeal, and he cannot show cause or actual prejudice sufficient to overcome this procedural default.

"[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Gordon alleges that he did not file an appeal because "his counsel was ineffective." Def. Mot., at pgs. 7-8, Dkt. No. 1037. The record, however, shows that Gordon was informed several times about his appellate rights, and the limitations on those rights he was agreeing to by pleading guilty. To begin with, he was informed in his plea agreement as to his limited rights to appeal. Specifically, paragraph 13 of his guilty plea agreement sets forth the circumstances of appeal:

> 13. If the Court accepts the recommendation of the parties and imposes the sentence stated in paragraph 2 of this agreement, the government agrees that it will not file any appeal of the sentence in this case, and the defendant agrees that he voluntarily and expressly waives all rights to appeal or collaterally attack the conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes. However, the defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.

11

The Court also reviewed these rights with Gordon during the change of plea hearing. Change of Plea Tr. 20:15-22:12, Docket No. 945, Oct. 16, 2019.

Moreover, Gordon cannot show that he suffered actual prejudice as a result of the alleged errors surrounding his plea or sentence. *See Frady*, 456 U.S. at 170 (error must have "worked to [defendant's] actual and substantial disadvantage") (emphasis omitted). The Plea Agreement set forth the government's agreement to a sentence of 204 months' imprisonment and its agreement to withdraw the previously filed Information Charging Prior Offenses pursuant to 21 U.S.C. § 851. Plea Agreement, at ¶¶ 3, 5. This allowed Gordon to receive a sentence that was below the mandatory minimum he faced had the Information Regarding Prior Offenses not been withdrawn. This also was reviewed with Gordon at the time of his plea. Change of Plea Tr. 11:8-12, Docket No. 945, Oct. 16, 2019. In short, without this plea, Gordon faced a mandatory minimum sentence of 20 years and a Guideline range of at least 352 to 425 months' imprisonment.[3] The imposed agreed upon sentence of 204 months - well below this range – does not even come close to the standard of "actual prejudice" set forth by the Supreme Court.

Gordon, likewise, cannot show cause or actual prejudice related to his prosecution under 18 U.S.C. § 922(g). Gordon crafts his argument under the Supreme Court's decision in *United States v. Rehaif,* a case that was decided on June 21, 2019 – almost

---

[3] Gordon's exposure under the Sentencing Guidelines would have been much higher without the Plea Agreement's stipulation as to the drug quantity that was reasonably foreseeable to Gordon in connection with the conduct to which he pled guilty.

12

four months before Gordon entered his guilty plea. In any event, as discussed in further detail below, the factual basis for the plea – to which Gordon agreed and the Court accepted, met the elements required by *Rehaif*.

For these reasons, ineffective assistance of counsel cannot provide cause for the default nor can Gordon recast this claim as one of ineffective assistance. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Indeed, "defense counsel cannot be faulted for failing to make a request that was not likely to be granted." *Jackson v. Carroll*, 161 F. App'x 190, 194 n.3 (3d Cir. 2005).

That leaves one route: Gordon may escape procedural default and have his habeas claims considered on the merits if he makes a threshold showing of "actual innocence." *Smith* v. *Murray*, 477 U.S. 527, 537 (1986).

The *Bousley* Court stated:

> It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey* [reinterpreting § 924(c)]. In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.

*Bousley,* 523 U.S. at 623-24.[4] Gordon cannot meet this standard.

---

[4] This standard is materially different from that that applies in a direct appeal. In

Gordon's claim as to his prosecution under 18 U.S.C. § 922(g) rests on the assertion that the government did not prove his knowledge of his status. That does not address the pertinent test. The question at this stage is not whether the existing record contains sufficient evidence to charge and prove the element; it is whether Gordon can meet a burden to show actual innocence, upon consideration of all available evidence, whether previously admitted or not. Gordon cannot do so.

To be clear, the specific question is not whether Gordon knew it was illegal to possess a firearm. *Rehaif* requires proof that Gordon knew his status as a person previously convicted of a crime punishable by more than a year in prison. It does not require proof that he knew that his firearm possession was illegal. *See United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) ("*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code."); *United States v. Maez*, 960 F.3d 949, 955 (7th Cir. 2020) ("*Rehaif*'s discussion of 'the well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse' makes doubly clear that § 922(g) requires knowledge only of status, not knowledge of the § 922(g) prohibition

---

*United States v. Nasir*, 982 F.3d 144, 160-77 (3d Cir. 2020) (en banc), the Court held that, in reviewing a 922(g) conviction for sufficiency of the evidence following a conviction at trial, the court may examine only the trial record. The Court explained at length the principles of plain error review of a criminal conviction dictating that result, and concluded that a pre-*Rehaif* conviction, in which the government introduced no evidence of the defendant's knowledge of his status, may not stand. *Bousley*, however, dictates a different and broader examination on habeas review, given the interests in finality that apply on collateral review.

itself."); *Rehaif*, 139 S. Ct. at 2205 (Alito, J., dissenting) (making statement undisputed by the majority that "the pointed use of the term 'knowingly,' as opposed to 'willfully,' in § 922(g), provides a ground to infer that Congress did not mean to require knowledge of illegality," and the majority instead "require[d] knowledge of both the conduct and status elements of the offense.").

Rather, the question is whether Gordon knew at the time he possessed a firearm in 2015 that he had previously been convicted of a felony. To show actual innocence, he must show that it is more likely than not that, upon considering all available evidence, no reasonable juror would conclude that he knew of his status as a person convicted of a crime punishable by more than a year. The available evidence and Gordon's sworn statement at his Guilty Plea hearing following the government's recitation of the factual basis for the plea as excerpted below squarely defeats any claim of actual innocence and complies with *Rehaif*.

> MS. SOLTIS:     With respect to Counts 49 and 50, those being the in relation to a firearm, the government's evidence would include the execution of a search warrant at Brookview Place in September of 2015, a place the defendant was seen coming and going from, and the recovery of a loaded firearm, that being a Ruger 9MM firearm recovered about 10 feet away from a large quantity of PCP at that location, as well as recovery of documents in this defendant's name and his driver's license that was recovered there.
>
> The government would also introduce records to show that the defendant had a previous conviction of a crime punishable by more than one year in prison, that he knew about that conviction and that the firearm involved was possessed in and

15

moved in interstate commerce, that being it had been manufactured outside of the Commonwealth of Pennsylvania.[5]

Q:      Mr. Gordon, did you hear what the attorney for the government said the government would show at trial?

A:      Yes, Your Honor.

Q:      And is that what happened?

A:      Yes.

Q:      You did what the government said you did?

A:      Yes.

Change of Plea Tr., 29:5-30:4.

Additionally, the undisputed Presentence Report ("PSR") establishes that Gordon

pled guilty in state court on April 18, 2002 to charges of robbery, possessing a firearm

without a license and possession of an instrument of crime and was sentenced to five to

ten years' incarceration. PSR, at ¶ 48.  On September 28, 2010, Gordon pled guilty to

charges of possession with intent to distribute controlled substances (cocaine) and

possession of a firearm by a prohibited person and was sentenced to three to six years'

imprisonment followed by four years of probation. PSR, at ¶ 49.  That probation expires

---

[5] As part of the factual basis for the plea, the government also incorporated the evidence presented during the trial that took place in the Fall of 2018. That evidence included wiretap calls in which Gordon called Brookview Place just days before the execution of the aforementioned search warrant and inquired about paying his rent and calls intercepted the day the search warrant was executed in which Gordon referred to the fact that law enforcement had "ran in my spot … my house." *See* Govt Trial Ex. W679; Change of Plea Tr., at 28:13-17.

in February 2022 and Gordon was serving that probation when he committed the crimes to which he pled guilty in this case. *Id.* Thus, Gordon not only knew that he was previously convicted of a crime punishable by more than one year in prison, as required by *Rehaif*, but he indisputably actually served much more than one year in prison, on multiple occasions. On this record, Gordon cannot show that he was unaware of his felon status, and thus cannot establish actual innocence under the *Rehaif* standard. *See, e.g.*, *United States v. Correa*, 2020 WL 5517466, at *3 (E.D. Pa. Sept. 14, 2020) (Kenney, J.) (the defendant cannot show actual innocence, as his "Presentence Investigation Report, to which he did not object, shows that before possessing the firearm on or about March 27, 2008, Correa plead guilty to and was convicted of four felony offenses under Pennsylvania law."); *accord United States v. Miller*, 954 F.3d 551, 560 (2d Cir. 2020).

Finally, Gordon's claim as to his Section 922(g) prosecution fails on the merits because neither *Rehaif* nor *Nasir* provide a basis for relief. In *Nasir*, the Third Circuit held that a *Rehaif* error in failing to prove at trial or state at a guilty plea that a 922(g) offender was aware of the status that made firearm possession illegal is plain error that requires a new trial. *United States v. Nasir*, No. 18-2888, at p.50 (3d Cir. Dec. 1, 2020) (en banc). That is not at issue here because, among other reasons, the factual basis for Gordon's guilty plea excerpted above – to which Gordon admitted – included that Gordon was aware of a prior conviction that made his possession of a firearm illegal. *See* Change of Plea Tr., 29:5-30:4. Oct. 16, 2019. Moreover, *Nasir* is inapplicable as it

involved a direct appeal, not the habeas motion presented here.

### 3. *Gordon's Claims also are Barred by his Guilty Plea Agreement.*

Notwithstanding procedural default, Gordon's claims as to his sentence and prosecution under Section 922(g) also are barred by his guilty plea agreement, which limits his right to collaterally attack his conviction and sentence.  Again, although Gordon states his claim as not obtaining a "favorable plea agreement," and failing to file objections to the PSR, argue for mitigation, challenge his sentence as "substantively unreasonable," or file a notice of appeal, in reality, he is appealing the 204-month sentence imposed.  These claims and his 922(g) claim are barred by his guilty Plea Agreement. They should be denied because Gordon has not alleged – and cannot allege - any miscarriage of justice sufficient to overcome the waiver in his Plea Agreement.

The Third Circuit has explained that there are "three elements to be considered when the government invokes an appellate waiver and the defendant contends that the waiver does not bar [his] appeal: (1) whether the waiver of the right to appeal [his] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; *i.e.*, what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (internal quotation marks omitted). In this case, consideration of all of the elements dictates enforcement of the waiver and denial of

18

Gordon's claims.

### a. The Plea and Plea Agreement Were Knowing and Voluntary.

Federal Rule of Criminal Procedure 11 requires that "[b]efore accepting a plea of guilty . . . the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." FED. R. CRIM. P. 11(b)(2). During the change of plea hearing, this Court engaged in an extensive colloquy with Gordon to determine whether his plea was knowing and voluntary. The following excerpts from the transcript of that hearing demonstrate that Gordon understood and voluntarily signed the plea agreement and entered the guilty plea of his own free will:

> Q:    Did anyone threaten or force you to plead guilty?
>
> A:    No.
>
> Q:    And has anyone made any formal promises or assurances to you to get you to plead guilty?
>
> A:    No.
>
> Q:    And are you pleading guilty of your own free will?
>
> A:    Yes.
>
> Q:    And that is because you are guilty?
>
> A:    Yes.
>
> * * * * *
>
> Q:    Now, Mr. Gordon, can you take a look at that

agreement. Turn to the back page of the Plea Agreement and tell me whether your signature appears on that agreement.

A:     Yes.

Q:     And did you voluntarily sign it?

A:     Yes.

Q:     Now, there's also an acknowledgment of rights there, the second document. Can you turn to the end of that. And does your signature appear on that document?

A:     Yes.

Q:     And did you sign that one voluntarily?

A:     Yes.

Q:     And did you read both of those documents?

A:     Yes.

Q:     You read them before you signed them, right?

A:     Yes.

Q:     Okay. And did you discuss the Plea Agreement thoroughly with your attorney?

A:     Yes.

Q:     And did your lawyer fully explain the written plea agreement to you?

A:     Yes.

Q:     And you've had enough time to talk it over with your lawyer?

20

A:     Yes.

\* \* \* \* \*

Q:     Mr. Gordon, did anyone promise or offer you anything
       other than what is set forth in the written plea agreement
       and what the attorney for the government has stated here
       today?

A:     No, Your Honor.

Change of Plea Tr. 7:25-8:20, 9:8-10:8, 13:15-19, Docket No. 945, Oct. 16, 2019.

The Court also addressed the appellate waiver with Mr. Gordon:

Q      What I want to talk to you now is about the waiver in
       your C plea, the appellate waiver in your C plea. As I
       explained to you, if you went to trial and were convicted
       and sentenced, you would have the right to file a direct
       appeal to the Court of Appeals. You would also have
       the right to bring a collateral charge, sometimes referred
       to as a habeas petition, or a motion under Section 2255
       of Title 28 of the United States Code, after your direct
       appeal has concluded. In a collateral challenge, you
       could argue that your conviction or sentence was
       imposed in violation of the Constitution or other laws.

       Under your Plea Agreement, your rights to file a direct
       appeal and a collateral challenge through habeas, or a
       Section 2255 motion, are severely limited. If I accept
       the recommendation of the parties and impose the
       sentence to which you and the government have agreed
       is appropriate, that is a term of imprisonment of 204
       months, neither you nor the government may file a
       direct appeal of the conviction and sentence in this case.

       Further, you have also agreed that you will not file a
       motion under 2255 collaterally attacking your
       conviction, sentence or any other matter relating to this

21

prosecution.

* * * * *

Q:     All of this means that if I impose the sentence to which
       you and the government have agreed, with one
       possible exception, ineffective assistance of counsel,
       there will be no review of this matter by any court.
       You are agreeing that the actions taken by this Court
       with regard to your guilty plea and the Court's
       sentence will be final. Your sentence will be final.

       Do you understand what I have explained about the
       waiver of the right to appeal and seek collateral relief?

A:     Yes, Your Honor.

Change of Plea Tr. 20:15-21:14, 22:2-12, Docket No. 945, Oct. 16, 2019.

As the transcript demonstrates, the plea was knowing and voluntary. This Court

assured more broadly that Gordon was competent, that the plea agreement was explained

to him, and that he had a full opportunity to discuss the agreement with counsel. This

Court's determination that the agreement in general, and the waiver in particular, were

knowing and voluntary was based on its own assessment of Gordon's answers and

demeanor and was well-grounded in the record. *See also* Change of Plea Tr. at 31:10-25,

Oct. 16, 2019.

Lastly, during the plea colloquy, Gordon stated that he was satisfied with his

attorney's representation and advice and that everything he had told the Court during that

hearing was truthful:

Q:     Has your lawyer provided you with enough

> information for you to make an informed decision
> about whether to accept a plea offer?
>
> A:      Yes.
>
> Q:      And are you satisfied with your lawyer?
>
> A       Yes.
>
> * * * * *
>
> Q:      Mr. Gordon, do you have any questions about anything
> that happened here today?
>
> A:      No, Your Honor.
>
> Q:      Just in your own words, tell me what happened here
> today.
>
> A:      … I feel like I took responsibility for my actions and
> pleaded guilty to the things that I was guilty of.
>
> Q:      And everything you told me was the truth?
>
> A:      Yes, Your Honor.

Change of Plea Tr. 7:12-17, 34:7-13, Docket No. 945, Oct. 16, 2019.

### b.      *The Sole Exception to the Waiver Does Not Apply.*

Since the Court accepted the C plea and imposed the sentence agreed upon by the

parties, Gordon's challenges to his sentence and claim that his "prosecution under 18

U.S.C.§ 922(g) is null and void" are barred by the Plea Agreement. *See* Plea Agreement

¶ 13; Def. Mot., at pgs. 6-9, Docket No. 1037. As set forth above, in the plea agreement

Gordon waived all rights to appeal or collaterally attack the conviction, sentence, or any

other matter relating to his prosecution and he expressly waived the right to raise on

appeal or collateral review any argument that the statutes to which he pled guilty are

unconstitutional or that the admitted conduct does not fall within the scope of the statute.

*Id.* While he retained the right to file a claim that his attorney provided ineffective

assistance of counsel, that is not what Gordon asserts here. Instead, he challenges his

sentence by arguing that his attorney did not negotiate a favorable plea and failed to

object to the PSR, argue for mitigation, object to his sentence as substantively

unreasonable, or file a notice of appeal. He also he argues that his "prosecution under 18

U.S.C. § 922(g) is null and void because the Government was not able to prove both that

Gordon knew he possessed a firearm and that he knew he belonged to the relevant

category of persons barred from possessing a firearm." Def. Mot., at pg. 9 (Docket No.

1037). In his Motion to Stay, he provides further context to this claim when he argues

that his charge on Count 50 of the Third Superseding Indictment (the 922(g) charge) "is

constitutionally infirm" and that "[t]o let this conviction stand would deprive Gordon of

due process and of the basic rights  guaranteed an accused by the Fifth and Sixth

Amendments." Mot. to Stay, at pg. 6 (Docket No. 1038). These claims, challenging his

sentence and his prosecution under Section 922(g), do not fall within the exception to,

and are expressly barred by, the Plea Agreement.

### c. The Case Does Not Present a Miscarriage of Justice.

Because the waiver was entered knowingly and voluntarily and no exception

applies, it must be enforced in the absence of a miscarriage of justice. In *United States v. Khattak*, the Third Circuit held that waivers of appeal are enforceable, but observed that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." 273 F.3d 557, 562 (3d Cir. 2001). In *United States v. Gwinnett*, the Court clarified that, contrary to a suggestion in *Khattak*, an appellate waiver does not operate to divest the Court of jurisdiction. 483 F.3d 200, 203 (3d Cir. 2007). Rather, where the petitioner has entered a knowing and voluntary waiver, *Gwinnett* explained, the Court will enforce the waiver and affirm the judgment, unless doing so would work a miscarriage of justice. *Id.*

The *Khattak* Court did not provide a definitive list of situations which amount to a "miscarriage of justice," but it observed that only extraordinary situations would suffice. *See, e.g.*, *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000) (there may be a miscarriage of justice if the sentence was "(1) imposed in excess of the maximum penalty provided by law or (2) based on a constitutionally impermissible factor such as race"); *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999) (there may be a miscarriage of justice if the plea agreement was the product of ineffective assistance of counsel). *Khattak* embraced the view of the First Circuit, that a reviewing court should evaluate appellate waivers case-by-case, considering the error claimed by the defendant and such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the

defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)).

It is apparent that the "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity," *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *Teeter*, 257 F.3d at 26), only where "manifest injustice" would result by enforcing the appellate waiver. *Gwinnett*, 483 F.3d at 206. Simply because an issue is meritorious is not sufficient. Adopting the view of other Circuits, the Third Circuit stated in *Khattak*: "[B]y waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits." 273 F.3d at 561.

To date, the Third Circuit has identified only very limited circumstances as presenting a miscarriage of justice that permit a collateral challenge to proceed despite the waiver. The Court has stated that an appellate waiver may not be enforced if the defendant should have been permitted to withdraw his guilty plea, *Wilson*, 429 F.3d at 458; if the defendant did not understand the plea agreement itself due to ineffective assistance of counsel, *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007); if counsel was ineffective in failing to timely file an appeal raising an issue explicitly exempted from the appellate waiver provision, *id.*; or if the government breached its own obligations under the plea agreement, *United States v. Schwartz*, 511 F.3d 403, 405 (3d

Cir. 2008). None of those circumstances apply nor are they implicated in Gordon's motion.

There was no miscarriage of justice in this case. As such, Gordon's claims as to his sentence and prosecution under 18 U.S.C. § 922(g) are subject to the collateral attack waiver in his Plea Agreement and should be denied. The plea and accompanying waiver were knowing and voluntary, and there was no miscarriage of justice. Indeed, a "knowing and intelligent waiver should not be so easily evaded." *United States v. White*, 307 F.3d 336, 344 (5th Cir. 2002).

### B. Gordon's Remaining Claims as to his Attorney's Performance are Entirely Meritless and Fall Far Short of the *Strickland* Standard.

In the remainder of his motion, Gordon alleges that his attorney, Paul Hetznecker, was ineffective pretrial by failing to: (1) communicate with him; (2) file any substantive pre-trial motions; and (3) conduct an independent investigation into the offenses to which Gordon admitted his guilt. He also claims that Mr. Hetznecker was ineffective at sentencing by failing to: (1) properly discuss and explain the Presentence Report ("PSR") to him prior to the sentencing hearing; (2) file substantive objections to the PSR; (3) argue for mitigation of punishment; and (4) file a notice of appeal.  These ineffective assistance claims are meritless and fall short of the demanding standard established by *Strickland v. Washington*, 466 U.S. 668 (1984).

In *Strickland*, the Supreme Court held that a claim of ineffective assistance of counsel requires a showing that defense counsel's performance was deficient and that the

petitioner was prejudiced by counsel's deficient performance. *Id.* at 687. The first prong of the test requires Gordon to show that his counsel's performance fell below an objective standard of reasonableness as defined by prevailing professional norms, such that Gordon was effectively denied the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. In applying the "professional norms" standard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To be entitled to relief, Gordon must also show that his counsel's errors were prejudicial. *Id.* at 687. In order to satisfy the prejudice prong, he must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As applied to the context of guilty pleas, this means that Gordon "must show . . . a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Ultimately, Gordon bears the heavy burden of showing that his counsel's performance prompted "a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. Gordon cannot meet this burden on any of his ineffective assistance claims.

28

1. ***Gordon's Claim that his Counsel was Ineffective Pretrial is Belied by the Extensive Record in this Case.***

Gordon alleges that his counsel was ineffective pretrial by failing to communicate with him, "failing to file any substantive motions," and failing to conduct an adequate pretrial investigation.  These claims are entirely meritless as they are at odds with the extensive record in this case and they fail the *Strickland* test.

In the four years between Gordon's arrest and guilty plea, voluminous discovery was produced to defense counsel, at least 67 substantive motions were filed and litigated by or on behalf of Gordon and his codefendants, numerous hearings were held on those motions including several lengthy hearings in which testimony was taken and government witnesses were cross examined, a 24-day trial was held, and jury selection in a second trial commenced after the jury in the first trial was unable to reach a verdict as to several counts against Mr. Gordon carrying mandatory minimum sentences.[6] Mr. Hetznecker filed at least 25 of the aforementioned motions, which included motions for disclosure of exculpatory evidence and *Brady* hearings, early production of *Jencks* materials, to retain rough notes, for discovery, to identify co-conspirator statements, for *Daubert* hearings on government experts, to suppress physical evidence, wiretap evidence and evidence obtained using a cell site simulator, several motions in limine, and motions to dismiss the Indictment for alleged outrageous government conduct and

---

[6] *See generally,* Docket Report. This includes motions filed by Gordon's codefendants, which the Court allowed Gordon to join when it granted Mr. Hetznecker's motion for joinder. *See* Docket Nos. 478, 496.

vindictive prosecution. *See* Docket Nos. 23-26, 89-91, 223-24, 226-28, 230, 232, 312, 313, 479, 479, 509, 583, 623, 692, 718, 894, 896. He led six other defense attorneys and a *pro se* defendant in the first trial and conducted lengthy cross examinations of the government's witnesses. He was prepared to lead three defense attorneys in the second trial, and he argued pretrial motions and participated in jury selection before Gordon decided to plead guilty. In short, the extensive record in this case squarely defeats Gordon's claims that his attorney was ineffective for failing to file pretrial motions or conduct an adequate pretrial investigation.

Gordon's claim that his counsel failed to communicate with him as to the consequences of pleading guilty or proceeding to trial is also belied by the record. The procedural history and voluminous docket in this case support Mr. Hetznecker's statements at sentencing (discussed below in detail) that Gordon's decision to plead guilty took time and that it was after numerous discussions between the two about Gordon's options.  Additionally, prior to the initial trial and the retrial, the Court colloquied Gordon as to whether a plea offer had been made by the government and discussed between Gordon and his counsel as follows:

| | |
|---|---|
| THE COURT: | Okay. So let me do some pretrial colloquies here, Mr. Gordon. |
| | First of all, Mr. Hetznecker, did the government make any plea offer to the defendant? |
| MR. HETZNECKER: | Yes, they did, Your Honor. |

| | |
|---|---|
| THE COURT: | Government, did the government make any plea offer to the defendant? |
| MS. SOLTIS: | Yes. Your Honor. |
| THE COURT: | Without telling me the terms of any plea offer, did you, Mr. Hetznecker, fully discuss with your client the terms of any offer made by the government? |
| MR. HETZNECKER: | Yes, Your Honor. |
| THE COURT: | Did you give your client your best advice about this offer and about the pros and cons of pleading guilty or proceeding to trial? |
| MR. HETZNECKER: | I did, yes. |
| THE COURT: | Mr. Gordon, did you thoroughly discuss with your attorney the offer made the by the government? |
| MR. GORDON: | Yes. |
| THE COURT: | And are you fully satisfied that you had enough time to discuss the offer thoroughly with your attorney? |
| MR. GORDON: | Yes. |

Tr. Transcript, 12:21- 13:21 (Docket No. 946, Oct. 15, 2019). *See also* Docket No. 618.

Additionally, Gordon was set for a retrial on October 15, 2019. That day, prior to commencing jury selection, the Court, at defense counsel's request, gave Gordon and his codefendants a significant amount of time to discuss the government's plea offer that Gordon accepted the next day.

On October 16, 2019, the Court conducted another colloquy at the beginning of the change of plea hearing:

Q:      And your lawyer has explained the nature and elements of the charges against you and fully explained your trial rights and possible defenses; Is that correct?

A:      Yes.

Q:      Okay. And has your lawyer answered all of the questions about the Third Superseding Indictment and what it means?

A:      Yes.

Q:      Do you have any questions now about the Third Superseding Indictment or the nature of the charges in the Indictment?

A:      No, Your Honor.

Q:      And has your lawyer provided you with enough information for you to make an informed decision about whether to accept a plea offer?

A:      Yes.

Q:      And are you satisfied with your lawyer?

A:      Yes.

* * * * *

Q:      Okay. And did you discuss the plea agreement thoroughly with your attorney?

A:      Yes.

Q:      And did your lawyer fully explain the written plea agreement to you?

A:      Yes.

Q:      And you've had enough time to talk it over with your lawyer?

A:      Yes.

Change of Plea, Tr. 5, Oct, 16, 2019, at 6:24-7:17; 9:25-10:8.

In these exchanges, Gordon was given multiple opportunities to voice any concerns that he had regarding his representation by Mr. Hetznecker. He affirmed, under oath, that he had spoken with Mr. Hetznecker regarding the charges, and the case as a whole. He also stated that he was satisfied with the representation provided by Mr. Hetznecker and that he had enough time to speak with him.

Additionally, at the sentencing hearing, defense counsel brought to the Court's attention the discussions between Gordon and his counsel which led to Gordon's decision to plead guilty:

> Your Honor, I am requesting that the Court accept the recommended sentence for a number of reasons. I have now known Mr. Gordon for over five years or about five years. And throughout the course of my representation of Mr. Gordon, I have seen an evolution in his thinking and I think it really culminated in his decision to plead guilty in this case and accept the offer by the government. I think it lifted a burden off him.

> * * * * *

> I really enjoyed representing Mr. Gordon. He is one of my favorite clients. I can say that. I don't generally rank them. I don't, and I've represented thousands of people over the years. We have had a very good relationship, and although we disagree, those disagreements don't culminate in any kind of confrontation. We are able to work it out, and I have come to appreciate him and the devotion he has to his family. He's put himself in this position. He knows he has to serve the time. I don't think he has ever shied about from his responsibilities to me in our conversations about the nature if this case.

33

* * * * *

>He became I think – in my mind he became one of those
>individuals that I really, really enjoyed seeing and talking to
>about a variety of things and not just the case.

Sentencing Hearing Tr. 27:8-30:9, 32:7-10, Docket No. 1048, Mar. 3, 2020.  Indeed, here

the Court was made aware of ongoing frequent efforts by counsel to work with and

engage in communication with Mr. Gordon about his case. In response to these

representations, Mr. Gordon did not disagree with his attorney and thus assented to Mr.

Hetznecker's representations to the Court about their long ongoing discussions about the

case and the course of his representation of the defendant. In fact, Mr. Gordon provided

further evidence of his discussions with his counsel when he assured Mr. Hetznecker of

his future plans stating:

>I told Paul this. I said no disrespect, Paul, I am going to show you and I
>want to keep in contact with Your Honor if that's no problem with her. And
>Paul, when I get out of here, I am going to make something of myself.
>Cause now I know what I have to do. And I don't have no room for no
>mistakes or nothing, but I really – this is the first time I really sat and really
>planned ahead. Everything before it, just a day at a time, whatever
>happened happened. This is the first time I actually sat down and set goals
>for myself and planned what I want to do. And I know whatever I want to
>do I can do it. I just have to – the same way in this year I was putting into
>illegal things, I am going to put in legal things. I promise you one day
>you're are going to look up, he told me he was going to do this.

Sentencing Hearing Tr. 34:13-35:4, Docket No. 1048, Mar. 3, 2020. Gordon's claim, then

that Mr. Hetznecker did not communicate with him about this case or his decision to

plead guilty is completely belied by the record and by Gordon's own statements under oath. Accordingly, the first prong of the *Strickland* test is not, and cannot, be satisfied.

Because *Strickland*'s performance prong is unsubstantiated in this case, consideration of the prejudice prong is unnecessary. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Nevertheless, Gordon cannot show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Gordon does not allege that he would have proceeded to trial – or actual innocence – as a result of Mr. Hetzneckers's alleged failures. Rather, he takes issue with the length of his sentence. This does not amount to prejudice under *Strickland*. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."); *United States v. Cormier*, 758 F. App'x 269, 275 (3d Cir. 2018) ("Once a defendant has pleaded guilty, he must then not only reassert innocence, but give sufficient reasons why contradictory positions were taken before the district court…") (internal quotation marks and citations omitted). Accordingly, Gordon's motion should be denied.[7]

---

[7] To the extent these claims challenge Mr. Hetznecker's strategic decisions, they are precluded because they relate to the alleged deprivation of constitutional rights that occurred before Gordon's knowing and voluntary guilty plea. The Supreme Court long ago established that "a guilty plea represents a break in the chain of events which has

## 2. *Gordon's Claims of Ineffective Assistance at Sentencing also are Without Merit.*

To the extent any of Gordon's claims as to his counsel's performance at

sentencing survive the waiver or procedural bar discussed above, they, too fail for lack of

merit. Gordon alleges that Mr. Hetznecker failed to properly discuss and explain the

---

preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).
Thus, in cases where a defendant is represented by counsel, he may not, after "solemnly
admit[ing] in open court that he is in fact guilty of the offense with which he is charged . .
. thereafter raise independent claims relating to the deprivation of constitutional rights
that occurred prior to the entry of the guilty plea. He may only attack the voluntary and
intelligent character of the guilty plea," *id.*, "through proof that the advice received from
counsel was not 'within the range of competence demanded of attorneys in criminal
cases.'" *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) (quoting *McMann v. Richardson*,
397 U.S. 759, 771 (1970)). *See also United States v. Broce*, 488 U.S. 563, 569 (1989) ("A
plea of guilty and the ensuing conviction comprehend all of the factual and legal elements
necessary to sustain a binding, final judgment of guilt and a lawful sentence.
Accordingly, when the judgment of conviction upon a guilty plea has become final and
the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether
the underlying plea was both counseled and voluntary. If the answer is in the affirmative
then the conviction and the plea, as a general rule, foreclose the collateral attack.");
*Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("The Brady trilogy [*Brady v. United
States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); *Parker v.
North Carolina*, 397 U.S. 790 (1970)] announced the general rule that a guilty plea,
intelligently and voluntarily made, bars the later assertion of constitutional challenges to
the pretrial proceedings."); *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007)
(holding that a guilty plea waives "many of the most fundamental protections afforded by
the Constitution, such as the right to a jury trial, the right to confront and cross-examine
witnesses, and the right against self-incrimination." (internal quotation marks and
citations omitted)). Thus, by unconditionally pleading guilty, Gordon admitted all of the
elements of the charges and effectively "waived all of these claims" for purposes of both
direct appeal and collateral relief. *United States v. Delgado–Garcia*, 374 F.3d 1337,
1341 (D.C. Cir. 2004); *see also Tollett*, 411 U.S. at 267; *McCarthy v. United States*, 394
U.S. 459, 466 (1969). In short, Mr. Hetznecker's strategic decisions in a case in which
Gordon admitted his guilt on multiple occasions cannot be found to be ineffective
assistance.

Presentence Report to him prior to sentencing; that he failed to file substantive objections to that report; and failed to argue for mitigation of punishment. Again, Gordon cannot meet the *Strickland* test for any of these alleged inactions and his claims should be denied. As set forth above, by virtue of his plea agreement and the Court's acceptance of the parties' joint recommendation, Gordon received a sentence that was 148 months below the low end of the applicable Sentencing Guideline range. Gordon, then, was not prejudiced by, but, indeed, benefited from, Mr. Hetznecker's representation.

Gordon's claims, also, are at odds with the transcript of his Sentencing Hearing. That transcript reveals that Mr. Hetznecker objected to the drug amounts attributed to Mr. Gordon in the Presentence Report's ("PSR") factual synopsis as being at odds with the jury's verdict during the first trial. The Court heard from both parties on that issue, which did not affect the guideline calculation because of the stipulations in the plea agreement. Nevertheless, the parties and the probation officer agreed to amend the PSR to clarify this point at Mr. Hetznecker's urging so that there would not be any adverse effect on Mr. Gordon in terms of determining his eligibility for programs offered by the Bureau of Prisons. *See* Sentencing Tr., at 7:2-14:4, Docket No. 1048, Mar. 3, 2020. The parties also agreed and brought to the Court's attention that pursuant to their stipulation as to drug weight, the Adjusted Offense Level was 35 and not 37 as stated in the Presentence Report thus resulting in a lower guideline range than that which the Probation Office originally calculated. *See id.* at 22:3-27:3. Finally, Mr. Hetznecker argued at length for mitigation

when he urged the Court to accept the joint recommendation, which was well below the applicable Sentencing Guideline range. *See id.* at 29:8-33:1.

For all of these reasons, to the extent Gordon's claims as to his counsel's assistance at sentencing survive the waiver and procedural bar discussed above, they fall far short of the *Strickland* standard and should be denied.

### E. __The Court Should Decline to Issue a Certificate of Appealability__.

Upon the denial of a Section 2255 motion by a district court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. § 2253. The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). The application for such a certificate should first be made to the district court. Third Circuit Local Appellate Rule 22.2 provides in pertinent part as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report. ...

*See also United States v. Williams*, 158 F.3d 736, 742 n.4 (3d Cir. 1998) ("as a matter of practice . . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court").

In order to present a "substantial showing of a denial of any constitutional right," in order to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal. *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

To establish the required showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question. *United States v. Cepero*, 224 F.3d 256, 262-68 (3d Cir. 2000) (en banc).

For the reasons stated above, Gordon has not made the required showing, and therefore a certificate of appealability should be denied.

## IV.   CONCLUSION

As set forth above, Mr. Hetznecker represented Mr. Gordon in this case for over four years. In that time, he filed and litigated numerous pretrial motions, represented Mr. Gordon at a lengthy trial, and negotiated a plea that allowed Mr. Gordon to receive a sentence that was far below the low end of the applicable Sentencing Guideline range. Any claim of ineffective assistance, then, is completely belied by this record. Moreover, many of the claims raised in Mr. Gordon's motion are barred procedurally and/or by his

39

knowing and voluntary guilty plea and plea agreement. His motion should be denied in all respects and a Certificate of Appealability should not issue.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


 _/s MaryTeresa Soltis_____
MARYTERESA SOLTIS
ANTHONY WZOREK
Assistant United States Attorney


Dated: January 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, a true and correct copy of the foregoing

was served via electronic filing and first-class mail to:

> Mr. Nayeem Gordon
> Reg. No. 72403-066
> Federal Detention Center, Philadelphia
> P.O. Box 562
> Philadelphia, PA 19105

> /s MaryTeresa Soltis
> MARYTERESA SOLTIS
> Assistant United States Attorney

Dated: January 15, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA**  :

    **v.**  :  **CRIMINAL NO.  15-496**

**NAYEEM GORDON**  :


**ORDER**


AND NOW, this ___ day of _____, 2021, upon consideration of petitioner Nayeem Gordon's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, his Motion to Stay and the response of the United States of America in opposition thereto, it is hereby ORDERED that the motions are DENIED.

IT IS FURTHER ORDERED that, because Mr. Gordon has not made a substantial showing of a denial of a constitutional right, a certificate of appealability shall not issue.


**BY THE COURT:**


_____
**HONORABLE WENDY BEETLESTONE
UNITED STATES DISTRICT COURT JUDGE**