IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 15-496-1 |
| NAYEEM GORDON | |

**MEMORANDUM OPINION**

For a third time, Nayeem Gordon, proceeding *pro se*, moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons set forth below, his Motion will be denied.

I.  **FACTUAL BACKGROUND**

The history regarding Gordon's conviction and his first two Motions for Compassionate Release is spelled out at length in the Court's opinion denying his Second Motion, *United States v. Gordon*, 2022 WL 1062976 (E.D. Pa. Apr. 8, 2022), *aff'd*, 2022 WL 14365245 (3d Cir. Oct. 25, 2022), but the gist of it is that Gordon was sentenced to serve 204 months in prison for charges related to his part in a drug trafficking operation.

Gordon's first Motion was denied for failure to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A) (explaining that a defendant moving a court for compassionate release must first "ha[ve] fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"). About two years later, Gordon filed a second Motion, claiming that he was obese and that he suffered from asthma, and that these conditions rendered him especially susceptible to complications if he were to contract COVID-19. *Gordon*, 2022 WL 1062976, at *2-3. That Motion was denied, in

1

part, because the seriousness of his offense, the Government's interest in adequately deterring criminal conduct, and the public's interest in remaining protected from future crimes, were all factors weighing against granting his Motion. *Id.* at 3-4.

## II. LEGAL STANDARDS

The compassionate release statute permits a court to modify an imposed term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable," only "if it finds that [] extraordinary and compelling reasons warrant such a reduction," and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S. § 5382(c)(1)(A)(i). So "a motion for compassionate release raises three questions: (1) whether there are 'extraordinary and compelling reasons' for modifying an imposed term of imprisonment; (2) whether a new sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a); and, (3) whether a new sentence would be consistent with any applicable policy statements." *United States v. Carter*, 711 F. Supp.3d 428, 434-35 (E.D. Pa. 2024) (citing *United States v. Pawlowksi*, 967 F.3d 327, 329 (3d Cir. 2020)), *aff'd*, 2024 WL 5339852 (3d Cir. Dec. 2, 2024).

Congress delegated to the Sentencing Commission the power to promulgate "general policy statements regarding the sentencing modification provisions in" 18 U.S.C. § 3582(c)(1)(A), which "shall describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). Generally, the Commission's policy statements are binding on courts. *Cf. United States v. Rutherford*, 120 F.4th 360, 375 (3d Cir. 2024) (citing *United States v. Berberena*, 694 F.3d 514, 522 (3d Cir. 2012)).

## III. DISCUSSION

Gordon cites several of the Sentencing Guideline's policy statements to support his

Motion.  First, he asserts that compassionate release is warranted under Section 1B1.13(b)(1)(B) which states that extraordinary and compelling reasons exist when:

> The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13(b)(1)(B).  In his Motion, Gordon argues that his obesity, his hypertension, and a hernia justify his release.

Beginning with Gordon's hernia-related arguments, Gordon avers that he suffered from the hernia for nearly four years until it was finally treated.  During that period, Gordon asserts that he was in "unbearable pain" as he awaited surgery.  According to his medical records, he does appear to have been diagnosed with a hernia in 2021, but his records also reveal that after his diagnosis, her refused reparative surgery.  Further, a few months after his diagnosis, his medical records show that the hernia was managed.  The records also reveal that, in 2024, when Gordon notified medical staff that his hernia was bothering him again, the medical staff immediately performed an examination and recommended surgery.  This time, Gordon accepted, and medical staff promptly performed a successful surgery.  Gordon appears to be recovering from surgery well, although he does suffer from minor pain when he increases his exercise.  Other than the conversations with medical staff which prompted his surgery and post-surgery follow-ups, Gordon's medical records show that he has not sought medical care for any other reason throughout the past two years.

As for his obesity and hypertension, although Gordon's previous Motion for

Compassionate Release was predicated in part on his purported obesity, his most recent medical records place his BMI in the category of "mildly overweight," not obese. Additionally, his most recent medical records listing measurements for his blood pressure indicate that his blood pressure sits well within the normal range.

Based on those records, Gordon has not demonstrated that he is "suffering from a serious physical or medical condition" or "a serious functional or cognitive impairment," or that he is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Indeed, his medical records confirm that, after his surgery, Gordon self-reported that he is "heal[ing] well" and "having no problems." Therefore, his hernia cannot constitute the kind of "extreme and compelling" reasons required to warrant compassionate release. *See United States v. Teman*, 2024 WL 262781, at *6 (S.D.N.Y. Jan. 24, 2024) ("In the end, however, the decisive question is not whether [the defendant] would fare better and receive better care if living at home. It is how [the defendant's] medical conditions measure against the demanding standards set by the Sentencing Commission for when such condition(s) are *extraordinary and compelling* so as to qualify for compassionate release.") (emphasis in original). And the same is true for his purported hypertension and obesity, assuming without deciding, that his medical records reflect such conditions. *United States v. Gomez-Moreira*, 2024 WL 245640, at *3 (E.D. Cal. Jan. 23, 2024) ("Diagnoses for chronic conditions, which are treatable by the BOP, such as diabetes, hyperlipidemia, and hypertension, do not establish extraordinary and compelling reasons that merit compassionate release.").

Gordon additionally argues that Section 1B1.13(b)(6) of the Sentencing Guidelines

4

justifies his release. That provision reads as follows:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

It is not pellucidly clear from Gordon's Motion what "change in law" he seeks to rely on. He cites to a change in the mandatory minimum sentence for those sentenced under 21 U.S.C. § 841(b)(1), but according to the final judgment in his criminal proceeding, Gordon was never sentenced according to that statutory minimum. Gordon also argues that, during sentencing, his Fifth Amendment double jeopardy rights were violated because—as he submits—he was sentenced under both 21 U.S.C. § 841 and § 860. That challenge is one which is appropriate only if brought pursuant to the federal habeas statute, not the compassionate release statute. *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) ("Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution."). Accordingly, Gordon has not established that a change in law impacting his sentence length is an extraordinary and compelling reason justifying his compassionate release.

Finally, Gordon cites Section 1B1.13(b)(5), the Sentencing Guidelines "catch-all" policy statement, which states that "extraordinary and compelling reasons" exist, thereby justifying compassionate release, when:

> The defendant presents any other circumstance or combination of

      circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b)(5).

    To establish extraordinary and compelling reasons under Section 1B1.13(b)(5), Gordon must point to circumstances *other than* those already raised, which either individually, or in combination with those raised already, warrant compassionate release. Gordon does not do so. Specifically, his change in law argument cannot be considered again under the catch-all policy statement. U.S.S.G. § 1B1.13(c) ("Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists . . . ."). And, his arguments concerning his medical, as set forth above, have already been considered and rejected under different rubrics. *Cf. Carter*, 711 F. Supp.3d at 440-441.

    An appropriate order follows.

                                      **BY THE COURT:**

                                      **S/ WENDY BEETLESTONE**

                                      **WENDY BEETLESTONE, J.**